**THIS IS A CAPITAL CASE**

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

TERRICK TERRELL NOONER                                                                    PETITIONER

v.                                          No. 5:08CV0003  JLH

RAY HOBBS, Interim Director,
Arkansas Department of Correction[1]                                                      RESPONDENT

**OPINION AND ORDER**

The Court previously denied Terrick Terrell Nooner's second petition for a writ of habeas corpus. Nooner now has filed a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). He asserts that the Court made several errors that will result in the execution of an innocent man who was convicted in an unfair trial. He also argues that he is entitled to an evidentiary hearing on claims of prosecutorial misconduct. Having carefully considered the matter, and for the reasons that follow, the Court denies Nooner's Rule 59(e) motion to alter or amend the judgment.

**I.**

Nooner first argues that the Court should alter its judgment denying relief on his claim that he is actually innocent under *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). Nooner asserts that the Court erred in not finding that he is 5' 9" tall, in finding that his expert did not fully account for the posture of the shooter and the victim depicted in the surveillance video, in finding that it is not possible to ascertain the extent to which his expert's calculations correspond to ground truth, in finding that the height of the shooter could have been discovered

---

[1] Nooner named as the respondent Larry Norris, Director, Arkansas Department of Correction. Norris has since resigned, and Hobbs has been appointed as Interim Director. The Clerk is directed to correct the docket accordingly. *See* Fed. R. Civ. P. 25(d).

previously with the exercise of due diligence, in finding that the shooter was right-handed, and in failing to credit the testimony of both Robert Rockett and Antonia Kennedy Spencer in full.

As to the claim of actual innocence, the arguments presented now are reiterations of arguments Nooner previously made. Relief is not warranted because the Court has fully considered and rejected these arguments during its merit review of the claim. *See Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (explaining that "[t]he function of a motion to alter or amend a judgment is not to serve as a vehicle to relitigate old matters."). Nooner has failed to present anything that necessitates that the Court revisit this claim, such as showing manifest errors of law or fact or providing newly discovered evidence. *See Innovative Home Health Care v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) ("Rule 59(e) motions serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' ") (citations omitted). Nooner argues that a motion to alter or amend a judgment may be granted in extraordinary circumstances or where the judgment may work an extreme and undue hardship, citing *Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989). No such circumstance is presented here.

Nooner first argues that the evidence unambiguously established that he is 5' 9" tall and that the Court erred in finding to the contrary. Actually, the Court did not find to the contrary. The Court noted that there is evidence in the record that Nooner is 5' 8" tall (Document #93, p. 9, n.1), as well as evidence that he is 5' 9" tall; but the Court assumed in its holding that Nooner is 5' 9" tall. *See* Document #93, p. 17. The Court's decision did not turn on a finding that Nooner is 5' 8" tall rather than 5' 9" tall. An unequivocal finding that Nooner is 5' 9" tall rather than 5' 8" tall would have no impact on the Court's decision to deny habeas relief.

Nooner disagrees with the Court's conclusion that the evidence as to the height of the murderer is not newly discovered evidence that could not have been discovered previously through

2

the exercise of due diligence. Essentially, he argues that if there are two ways of proving a fact, one of which was available before the first habeas petition and the other only after the habeas petition, a second or successive habeas petition can be pursued relying on the method of proving the fact that was not available at the time of the first petition. The Court rejects that argument as an unreasonable interpretation of 28 U.S.C. § 2244(b)(2)(B)(i).

Here, the claim of actual innocence is based on the assertion that the murderer was Robert Rockett. Part of the factual predicate for that claim is that the gunman in the surveillance video is 5' 6" tall, which is Robert Rockett's height, rather than 5' 9" tall, which is Nooner's height.[2] Nooner attempts to prove that the gunman was 5' 6" tall through the testimony of Richard Ian Hartley, who estimated the height of the suspect in the surveillance video by using photogrammetric computer vision, which involves sophisticated mathematical techniques that were not available before the year 2000. Although the mathematical techniques used by Dr. Hartley were not available when Nooner filed his first habeas petition on July 30, 1996, a simpler method for determining the height of the murderer was available—as both experts agreed at the evidentiary hearing. The height of the murderer could have been determined in 1993 by placing a surveyor's ruler where the gunman was standing in one of the frames of the surveillance video, taking a picture using the same camera pointed in the same direction, and then superimposing that image on the image of the gunman standing in the same place. That technique cannot be used now because the laundromat was remodeled in 2002 and the precise location where the gunman was standing at any given time can no longer be ascertained—hence the need for Dr. Hartley's more complicated methods. As

---

[2] The rest of the factual predicate for Nooner's claim of actual innocence lies in the declarations of Rockett and Antonia Kennedy Spencer. The Court explained in its original opinion why their declarations are unreliable. That issue will not be revisited here.

previously stated, although the techniques used by Dr. Hartley were not available before the year 2000, a simpler method of ascertaining the height of the subject in the video was available, so Nooner has failed to show that the factual predicate for his claim could not have been discovered previously.

Nooner says that he cannot be charged with a duty to exercise due diligence before the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") on April 24, 1996. Between September 1993, when Nooner was tried, and April 24, 1996, when AEDPA became effective, a second or successive habeas petition that raised grounds not asserted in an earlier petition was required to show cause for not raising the ground for relief earlier. *Charron v. Gammon*, 69 F.3d 851, 859 (8th Cir. 1995). A petitioner could show cause "where the factual . . . basis for a claim was not reasonably available to him and he was not on notice of the claim's availability." *Id*. at 860 (quoting *Jennings v. Purkett*, 7 F.3d 779, 782 (8th Cir. 1993)). Nooner does not explain how that standard differs from the due diligence standard of AEDPA. Nevertheless, as applied to this case, the earlier standard would require Nooner to show that means of ascertaining the height of the gunman in the surveillance video were not "reasonably available to him." As has already been explained, Nooner cannot meet that burden because the height of the murderer could have been ascertained by a simple method in 1993—as both experts testified at the evidentiary hearing.

Nooner attempts to avoid the conclusion that the height of the murderer could have been ascertained earlier by saying that there is no way to know if the camera is the same or different as the one in place at the time of the shooting.[3] Using the pre-AEDPA standard, the burden would be

---

[3] His contention on this point is somewhat at odds with his reliance on Dr. Hartley's analysis. Dr. Hartley used the height of the camera as the reference point for calculating the height of the murderer. The height of the camera was measured in 2006. Nooner introduced photographs to show that the camera housing appeared to be in the same place in 2006 as in

on Nooner to show cause for the failure to raise the claim previously by showing that the factual basis for the claim was not reasonably available to him. *Id*. at 859-60. Under AEDPA, the burden also is on the petitioner to show that the factual predicate could not have been discovered previously through the exercise of due diligence. *Johnson v. Dretke*, 442 F.3d 901, 908 (5th Cir. 2006). If it can no longer be ascertained whether the camera had been changed between March 16, 1993, when Scot Stobaugh was murdered, and July 30, 1996, when Nooner filed his first habeas petition, then Nooner cannot meet his burden under either standard. Nooner offers no evidence that the camera was changed, nor does he even claim that it was. He says, instead, that whether it was changed cannot be ascertained, which is true. Due to the passage of time, the owner of the laundromat cannot say whether the camera has been changed; but that fact undercuts rather than supports Nooner's attempt to meet his burden of proving that means of ascertaining the murderer's height were not reasonable available to him.

The remainder of Nooner's arguments regarding his claim of actual innocence are simply disagreements with the Court's assessment that the impact that various items of evidence would have on reasonable jurors. Nooner did not show that, in the light of new evidence, no reasonable juror would have found him guilty beyond a reasonable doubt, nor does his motion to alter or amend explain how he believes that he met that burden. *See House v. Bell*, 547 U.S. 518, 536-37, 126 S. Ct. 2064, 2076-77, 165 L. Ed. 2d 1 (2006); *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995). At one point Nooner criticizes the Court's observations regarding the relative size of the gunman as compared to Scot Stobaugh as "unscientific and unreliable," but the Court was simply describing how reasonable jurors would likely see the evidence. The duty of the

---

1993. Part of the State's criticism of Dr. Hartley was that it cannot be determined with certainty whether the camera inside of the camera housing is the same.

Court "is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538, 126 S. Ct. at 2077. Nooner would have the Court say that reasonable jurors would be more likely to believe Dr. Hartley's calculations than what they can see with their own eyes, but jurors are not obliged to, and are not likely to, disregard what they can see in deference to an esoteric mathematical and technological analysis the accuracy of which cannot be verified. Although Nooner asserts that the Court is "flatly incorrect" in saying that it is impossible to say the extent to which Dr. Hartley's calculations correspond to ground truth, the Court does not agree. Because he did not calculate the height of any object in the videotape the height of which could be independently confirmed, it is impossible to know the extent to which Dr. Hartley's calculations correspond to ground truth.

As noted, Nooner's claim of actual innocence is based on the assertion that Robert Rockett murdered Scot Stobaugh. Rockett is 5' 6" tall and weighs 115 pounds. Knowing that Scott Stobaugh was 5' 10" tall and weighed 170 pounds, no reasonable juror could conclude, after viewing the surveillance video, that the murderer was 5' 6" tall and weighed 115 pounds because Stobaugh and the gunman are very close in height and weight. Nooner says in his motion to alter or amend that a person's measured length when lying down is greater than his height when standing so that Stobaugh may have been only 5' 8.5" tall. Document #96, p. 8. If so, that would not change the conclusion. As the Court has stated many times, the gunman and Stobaugh appear to be of approximately the same height and weight. If Stobaugh was 5' 8.5" tall and weighed 170 pounds, he still would be approximately the same height and weight as Nooner (5' 9" tall and 164 pounds), but not nearly so close to the height and weight of Rockett (5' 6" tall and 115 pounds).

Nooner's arguments disregard the fact that he was positively identified at trial by Jazmar Kennedy and Johnny Martin as the person in the surveillance video based on his physical appearance

6

and the clothes he was wearing. In addition, the evidence at trial and at the second evidentiary hearing in this case established that Nooner told Antonia Kennedy that he shot and killed a man at a laundromat on the night that Stobaugh was murdered.[4]

Nooner failed to establish that, considering the new evidence in light of the evidence as a whole, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327, 115 S. Ct. at 867. Nothing in his motion to alter or amend convinces the Court that he met that burden.

**II.**

Nooner also argues that the Court committed error in denying relief on his prosecutorial misconduct claim. Nooner contends that the Court incorrectly characterized Nooner's claim that the prosecution unconstitutionally suppressed impeachment evidence in regards to Antonia Kennedy (now Spencer). Nooner also states that the Court erred in finding that the underlying facts could have been discovered previously through the exercise of due diligence.

In its original opinion, the Court said that the only instance of alleged prosecutorial misconduct that Nooner arguably could not have discovered previously through the exercise of due diligence is the claim in Antonia Kennedy's declaration that law enforcement authorities forced her to testify falsely. Nooner says in his motion to alter or amend the judgment that the Court erroneously characterized this portion of the claim. The Court's characterization was based on several statements in Kennedy's declaration as well as Nooner's petition. In her declaration, Kennedy said:

---

[4] Kennedy so testified at the trial and at the second evidentiary hearing held by this Court. Rockett also testified that Nooner told Kennedy that he committed the murder.

7

- "They [detectives and sheriff's deputies] told me they could have my children taken away from me and my family if I did not say what they wanted me to say." (¶ 6)

- "Everything the police wanted me to say came down to, Terrick was guilty." (¶ 7)

- "The police and prosecutors told me to say everything was Terrick if I wanted to see my kids again and not be beaten up in the jail." (¶ 9)

- "If I had told the truth on the witness stand, I could have gotten life sentences for each of the armed robberies that the police had on me." (¶ 10)

- "One of the things that I was told to say was that it was Terrick on the videotape in the Laundromat. It was not. It was Rockett. I was also told to say that it was my sister's coat that the person was wearing. I honestly cannot tell whether it was or was not my sister's coat in the video . . . . I was also told to say that Terrick picked up the murder weapon from my sister's house and took it away to get rid of it. That never happened." (¶ 12)

*See* Document #2, Ex. 9. It is apparent from these quotations that Antonia Kennedy stated in her declaration that law enforcement authorities forced her to testify falsely. Likewise, in his habeas petition, Nooner alleged that law enforcement officials "coerced, induced, and ultimately coached [Antonia Kennedy] to give false testimony." Document #2, p. 19. He also alleged:

> By testifying falsely against Mr. Nooner, Antonia Kennedy could walk away scot-free from a plethora of serious felony cases. . . . On the other hand, she knew that if she told the truth at Mr. Nooner's trial she could get life sentences for her kidnapping and assault charges or for any of the armed robberies that the police had on her.

*Id*. at 20. In another place, Nooner alleged:

> Antonia Kennedy also admits that she lied to the jury when she testified that she saw Mr. Nooner in possession of a .22 Ruger around the time of the crime. She now admits that this testimony, like her testimony that Mr. Nooner confessed to her, was false and procured by the State.

*Id*. at 24. Furthermore, Nooner alleged, "The State's star witness admits that she lied at the State's behest . . . ." *Id*. at 27.[5] Thus, Nooner is incorrect when he says that the Court erroneously

---

[5] All of these allegations were incorporated by reference in the portion of Nooner's petition that alleged prosecutorial misconduct. Document #2, p. 30.

characterized this aspect of his claim. Antonia Kennedy said in her declaration that law enforcement authorities forced her to testify falsely, and Nooner so alleged in his petition. At the evidentiary hearing, however, Antonia Kennedy recanted that declaration (as she has previously recanted other testimony on different occasions) and told the Court that no law enforcement authorities had ever asked her to lie.

Moreover, the Court did not say that Nooner's only claim of prosecutorial misconduct was that Antonia Kennedy was forced to testify falsely. The Court addressed the entirety of Nooner's prosecutorial misconduct claim, finding that, other than Antonia Kennedy's statement that law enforcement authorities forced her to testify falsely, Nooner's claim was untimely because the factual predicate could have been discovered long before the filing of Nooner's second habeas petition.

Nooner argues that no lack of due diligence can be attributed to him on a claim that the State has concealed evidence, citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S. Ct. 1936, 1952, 144 L. Ed. 2d 286 (1999). In *Strickler*, the issue was whether there was cause to excuse the failure of the petitioner to raise his *Brady* claim in state court. The Supreme Court held:

> [P]etitioner has established cause for failing to raise a *Brady* claim prior to federal habeas because (a) the prosecution withheld exculpatory evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecution's duty to disclose such evidence; and (c) the Commonwealth confirmed petitioner's reliance on the open file policy by asserting during state habeas proceedings that petitioner had already received "everything known to the government."

*Id*. Here, the issue is not whether Nooner established cause for his failure to present a *Brady* claim to the state courts; the issue here is whether Nooner may pursue a claim of prosecutorial misconduct in a second or successive habeas petition. As noted above, Nooner must show that the factual predicate for his claim could not have been discovered previously through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B)(i) (2006). That requirement applies even to a *Brady* claim that

was not presented in a prior habeas petition. *Tyler v. Purkett*, 413 F.3d 696, 705 (8th Cir. 2005); *see also Dretke*, 442 F.3d at 909. Other than Antonia Kennedy's now recanted claim that law enforcement authorities coerced her to testify falsely, Nooner's petition presented no claims of prosecutorial misconduct that could not have been discovered through the exercise of due diligence when he made his first application for habeas relief.[6] Nooner alleges nothing that would show that the State continued to conceal the factual predicate for his present claims during the years after his trial, nor that some other factor kept the factual predicate from being discoverable through the exercise of due diligence. Indeed, his petition asserts that his allegations of prosecutorial misconduct are confirmed by testimony given by Antonia Kennedy in a 1993 trial of Robert Rockett for murdering a convenience store clerk. Document #2, pp. 33-34. Nooner does not explain how his reliance on testimony given in open court in 1993 can be reconciled with his assertion that he could not have discovered those facts prior to Antonia Kennedy's declaration of August 21, 2007.

Even at Nooner's trial, defense counsel knew that Antonia Kennedy had made allegations of being threatened and intimidated by the police and had received promises of leniency regarding her testimony against Nooner. During cross-examination, Nooner's attorney asked Kennedy, "And you told him that the reason that you gave that information to the police was because you had been threatened and coerced?" Kennedy answered that it was not the Little Rock Police Department, it was the police in Jonesboro. (Trial Transcript, vol. IV at 1347.) Kennedy was then questioned about having charges dropped if she testified against Nooner. She later testified that a defense investigator threatened and intimidated her. (*Id.* at 1356.) She also stated that she did not know the difference between a prosecutor and private investigator. (*Id.* at 1333.) During cross-examination, Kennedy

---

[6] Nor does he show that the basis for the claim "was not reasonably available to him." *Charron*, 69 F.3d at 859.

testified that the police had threatened and coerced her by asking about her children. (*Id.* at 1378.) Thus, both at Nooner's trial and at a trial of Robert Rockett, both of which were in 1993, Antonia Kennedy made claims similar to those upon which Nooner relies here.

Nooner has failed to show that the factual predicate for his claims of prosecutorial misconduct could not have been discovered previously through the exercise of due diligence.

## CONCLUSION

Nooner's motion to alter or amend the judgment is DENIED. Document #96.

IT IS SO ORDERED this 6th day of May, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE